## J. B. CROSSEN, APPELLANT, v. R. P. EARHART, SECRETARY OF STATE, RESPONDENT.

MILEAGE—SHERIFF CONVEYING PRISONERS.—A sheriff is not entitled to mileage in addition to other fees prescribed in section 5 of the laws of 1874, prescribing the fees of sheriffs for transporting a convict to the state penitentiary. Said section 5 prescribes all the compensation a sheriff is entitled to for such service.

APPEAL from Multnomah County.

This case is a petition for a writ of mandamus to require the respondent, as secretary of state, to audit, allow, and issue a warrant on the treasury for thirty dollars, which appellant claims to be due him for mileage in conveying a prisoner, convicted of felony, from the Dalles to the penitentiary at Salem, the appellant being sheriff of Wasco county, and charged with the duty of conveying said prisoner as aforesaid.

The court below sustained the demurrer and gave judgment, from which this appeal is taken.

*Shattuck & Killin,* for appellant:

The amount here involved is small, but the question applies to all the sheriffs in the state; and to every prisoner. This mileage is claimed under the express provisions of law. Every statute of this state since 1855 which has attempted to regulate in a general way the fees of officers, has contained in letter or substance this general provision: "Every officer or person whose fees are prescribed in this chapter, who shall be required to travel in order to execute or perform any public duty, in addition to the fees hereinbefore prescribed shall be entitled to mileage, at the rate of ten cents per mile, in going to and returning from the place where the service is performed." (Sec. 14, p. 605 of the Code; sec. 18, p. 483 of laws of 1855.)

This is a provision of law, particular or special in its character, but general in its operation. Through all the changes, amendments, and repeals and re-enactments of the fee bill, or portions of it, this provision has stood unrepealed and untouched until 1876 (Laws of 1876, p. 34), when it was re-enacted in the same words, with a proviso that it should not apply to assessors. And this re-enactment in 1876, excepting assessors out of its provisions, makes it conclusive that it was the legislative intent to allow sheriffs mileage for the service in question.

The act of 1874 (p. 125, sec. 5), did not in terms repeal this section 14, nor does it do so by implication, for there is no repugnance, either in letter or spirit, between section 14 and the act of 1874; for the rule is that a general statute without negative words will not repeal the particular provisions of a former one, unless the two are irreconcilably inconsistent. (Sedg. Stat. and Const. Law, 123–128; Smith Com. 879, and authorities cited; 21 Penn. St. 42, 43; 70 Id. 346.) The act of 1874 is not a separate and independent act. It is a substitute, and nothing more, for sections 2 and 4, etc., of the tit. 1, chap. 20, of the General Laws, and section 14 of the latter, re-enacted by the statute of

1876 (p. 34), applies to the act of 1874. Otherwise there is no law whatever allowing a sheriff mileage for any service whatever, an oversight of which we cannot presume the legislature guilty. It is said that the travel in this case is itself the duty or service performed, and that *per diem* is provided, and no mileage can be allowed, but this is straining the meaning out of words. "Conveying and delivering him" surely imply something more than merely traveling with him. It is a further duty to be performed outside of the sheriff's business office, and carrying the same responsibilities and liabilities of other public duties, and in addition, the necessity of travel.

The former statutes, in providing for the compensation of sheriffs for conveying and delivering a convict to the penitentiary, provided in the same paragraph for mileage, while this statute of 1874 does not mention mileage; but from this circumstance no argument can be drawn against the construction we claim. For the former statutes all allow mileage for the sheriff "and such convict." If mileage for the convict had not been provided, there would have been no necessity of mentioning mileage in the same paragraph in order to entitle the sheriff to claim it, because section 14 had already provided for it, and to have mentioned mileage in the act of 1874, or in any provision where the convict was not coupled with the sheriff in drawing mileage, would have been simply surplusage.

*Dolph, Bronaugh, Dolph & Simon,* for respondent:

In sustaining the demurrer, the court below gave the following written opinion:

"Prior to 1874, the fees of county clerks and sheriffs were provided for in sections two and four of chapter twenty, of the Miscellaneous Laws. Section four provided, among provisions for other service, that the sheriff should have 'for conveying a convict to the penitentiary and delivering him to the proper officer thereof, four dollars per day, besides mileage for himself and such convict, besides the necessary expense incurred in guarding such convict during such conveyance, to be paid out of the state treas-

ury.' The compensation here provided for applied to the
sheriff of Wasco county. In the same chapter—chapter
twenty, Miscellaneous Laws—it was provided as follows:
'Every officer whose fees are prescribed in this chapter,
who shall be required to travel in order to execute or per-
form any public duty, in addition to the fees hereinbefore
prescribed, shall be entitled to mileage at the rate of ten
cents per mile, in going to and returning from the · place
where the service is performed.' (Sec. 14, chap. 20, Misc.
Laws.) The supreme court having held that this provi-
sion only applied to officers whose fees were provided for
in that part of the chapter which preceded this section, the
legislature of 1876 so amended it as to make it applicable
to every case provided for in the chapter, excepting only
the case of assessors. This amendment, however, does not
affect the question presented in this case.

   " In 1874, the legislature passed an act entitled "An act
to repeal sections two and four of an act approved October
23, 1872, entitled," etc. These were the sections which
provided for the fees of sheriffs and clerks. The first sec-
tion of this act repeals sections two and four of chapter
twenty, Miscellaneous Laws, prescribing the clerks' and
sheriffs' fees, in express terms. The second section provides
a table of fees for county clerks. The third, fourth, fifth,
and sixth sections of the act prescribe the fees of sheriffs.
Section five is as follows: ' The sheriff shall receive for
conveying a convict to the penitentiary, and delivering him
to the proper officer thereof, three dollars per day for each
day actually engaged, besides necessary traveling expenses
for himself and such convict, and the necessary expense in-
curred in guarding such convict during such conveyance, to
be paid out of the state treasury; *Provided*, That where
there is direct communication, either · by railroad or by
steamboat, from the place from which said convict is to be
conveyed to the penitentiary, no allowance shall be made
for guards.' This provision differs from that contained in
section four, repealed by this act, in this, that it allows the
sheriff three dollars per day instead of four dollars, for con-
veying convicts to the penitentiary, and instead of mileage

for the sheriff and convict, it allows him necessary traveling expenses."

"Counsel for the petitioner claims that the effect of this act of 1874, so far as it relates to the compensation of sheriffs, is merely to amend section four, of chapter twenty, of the Miscellaneous Laws, and that the provision for mileage for all officers whose fees are prescribed in that chapter, and who are required to travel, therefore applies to the case of sheriffs when they convey convicts to the penitentiary. In support of this view, it is argued that unless this act be construed to be amendatory, and a part of chapter twenty, of the Miscellaneous Laws, the legislature will have done a 'wrong' to sheriffs, since the provision for mileage in any case only applies to persons whose fees are prescribed in that chapter. The act of 1874 is by its terms an independent act. It provides a complete table of fees for sheriffs and clerks. It does not purport to amend any part of chapter twenty, referred to. It expressly repeals certain sections in that chapter, and enacts other sections in lieu of those repealed. The new enactment does not correspond with the old statute in the number of the sections, or in their arrangement. Thus, the services and fees prescribed for the sheriffs in sections three, four, and five of the new act are embraced in four, five, and twelve of the old one, and the provision in relation to conveying convicts to the penitentiary, which constitutes the whole of section five in the new act, is a portion of section four in the old one, while section five in the latter act relates to the fees of coroners, and is not repealed. A new rule of construction will have to be discovered before the act of 1874 can be held to be amendatory of the old law in the particulars claimed in the argument.

"The object of the new act, as appears from the emergency clause expressed in it, was to reduce the fees of clerks and sheriffs. The taking away of the sheriff's mileage is consistent with the main object of the act. If the legislature carried this reduction to an unreasonable extent, the judges are not for that reason to reject the act. 'For,' as Blackstone expresses it, ' that were to set the judicial power

above that of the legislature, which would be subversive of all government.' I do not, however, place the decision of this question upon the ground that the new act is not amendatory of the old one. I assume for the purposes of this case that it is so amendatory, and that the sheriffs are entitled to mileage where they are required to travel in order to perform any service required of them in section 3 of the act of 1874.

"Assuming, therefore, that a sheriff is entitled to mileage, whenever he is required to travel in order to perform any public duty, the question still remains, is the travel which he performs in conveying convicts to the penitentiary, travel performed in order to enable him to execute a duty required of him, or is it in itself the duty required? When a sheriff serves a subpena or summons he is entitled to receive twenty-five cents for the service. He may be required to travel fifty or more miles to perform the duty. In such case the duty is one thing, the travel another. The compensation is for the performance of the duty, of which the travel is no part. The conveyance of prisoners to the penitentiary necessarily includes travel. To ' convey' a prisoner to the penitentiary is in every case to travel to the penitentiary and transport or carry the prisoner there. The travel is a necessary and principal part of the service of conveying, for which the statute allows three dollars per day. If the statute, instead of providing that the sheriff shall receive three dollars for every day he is actually engaged in conveying convicts to the penitentiary, had provided that he shall receive ten cents per mile for the service of so conveying convicts, the argument now made would have applied with no less force than it now does. Whether the compensation for the service performed be measured by the time consumed in the act of conveying or by the distance traveled, the construction of the statute must be the same.

"To say that a sheriff is entitled to three dollars per day and expenses of travel and guards for conveying convicts, and to ten cents per mile for all travel performed ' in order ' to convey, would be a solecism in words and in legislation.

There is no other service aside from that of traveling in the act of conveying prisoners, to which the *per diem* provided for can apply. It is not intended to compensate him for consenting to be sheriff, for enjoying the honors or bearing the responsibilities of official existence. These do not come within the language of the provision which describes the service. The effect of the construction contended for would be to make the compensation of sheriffs for this · service greater under the act of 1874 than it was under the old law, and yet the intention of the legislature was, as it appears in the act, to reduce the compensation of sheriffs and clerks. The provision allowing the sheriff three dollars per day for the time actually employed in conveying convicts to the penitentiary, besides necessary traveling expenses for himself and such convict and the expense of guarding such convict, includes all the compensation which he can receive in consequence of such service."

With the lucid statement of facts and conclusive argument contained in the forgoing opinion, we might well rest the case, but we will briefly state the reasons why we think the petitioner not entitled to mileage as claimed by him.

Section 14, of title 1, of chapter 20, of the Miscellaneous Laws of Oregon, as amended by the act approved October 20, 1876, provides only for mileage in addition to the fees prescribed by chapter 20. The amended section is as follows:

"Section 14. Every officer or person whose fees are prescribed in this chapter, who shall be required to travel in order to execute or perform any public duty, in addition to the fees prescribed in this chapter, shall be entitled to mileage at the rate of ten cents per mile in going to and returning from the place where the service is performed, except assessors, who shall not be entitled to mileage."

While the act of 1874 does not professedly and in express terms repeal the provisions of chapter 20 of the Miscellaneous Laws, in regard to sheriffs' fees, yet being a new and independent act, repugnant to the previously existing law on the same subject, the former statute was thereby necessarily superseded and in effect repealed. (5 Or. 152; Id. 243; Id. 275.) Wherefore, the fees of sheriffs were not "pre-

scribed in this chapter" 20, but were prescribed by the act of 1874, at the time when section 14, of title 1, of chapter 20, was amended by the act of October 20, 1876, and sheriffs are therefore not entitled to the mileage of " ten cents per mile" allowed by the act of 1876, to officers whose fees were then prescribed in said chapter 20 of the Miscellaneous Laws.

" A subsequent statute revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on principles of law, as well as on reason and common sense, operate to repeal the former." (Smith's Stat. and Const. Con., sec. 786; 7 Mass. 142; 12 Mass. 545.) " When some parts of a revised statute are omitted in the revising act, the parts omitted are not to be deemed as revived by construction, but are to be considered as annulled." (Smith's Stat. and Const. Con., sec. 785; 12 Mass., 537; 1 Pick. 43.)   There are three points to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy.   *   *   *   And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy.   (1 Bl. Com. 87.)

The mischief intended to be remedied by the act of October 29, 1874, is expressed in the emergency clause of that act to be that " the present fees of clerks and sheriffs are manifestly too high, and are therefore an unnecessary burden upon the taxpayers." It would be a startling method of construction, indeed, if the judges should precisely reverse the above canon, and " so construe the act as to suppress the remedy and advance the mischief," by allowing to sheriffs ten cents per mile under the act of 1876, contrary to its letter, beside the fees and traveling expenses allowed by the act of 1874, thus increasing their compensation above what they were entitled to receive under the provisions of chapter 20 of the Miscellaneous Laws, which the legislature declared to be " manifestly too high."

And, further, the point made by his honor the judge of the court below, in his opinion in this case, that the " conveying" of a prisoner to the penitentiary is within itself the

very " duty to be performed," under the provisions of either
sec. 4, of chap. 20, Misc. Laws, or of sec. 5 of the act of
October 29, 1874, which duty necessarily includes the act
of traveling in order to "convey," is so unanswerably
sound, and conclusive of the question at issue, that any
attempt on our part to elaborate his argument in that behalf
would detract from its conciseness without adding to its
force.

By the Court, BOISE, J.:

In this case we are called on to construe section 5 of the
act of the legislature approved October 29, 1874, providing
for the fees of clerks and sheriffs. Said section is as fol-
lows: "The sheriff shall receive for conveying a convict to
the penitentiary and delivering him to the proper officer
thereof, three dollars per day for each day actually engaged,
besides necessary traveling expenses for himself and such
convict, and the necessary expenses incurred in guarding
such convict during such conveyance." This section is a
substitute for a former section of the general laws. See
Statutes, 603, which provides that the sheriff shall be al-
lowed "for conveying a convict to the penitentiary and de-
livering him to the proper officer thereof, four dollars per
day, besides mileage for himself and such convict, besides
the necessary expense incurred in guarding such convict
during such conveyance."

In the section last above quoted, mileage was expressly
given to the sheriff for himself and convict; in the latter,
this provision is left out, and in lieu thereof the sheriff is
given his necessary traveling expenses for himself and such
convict. It is claimed that in addition to the allowances in
this section, the sheriff is also entitled to charge mileage,
under section 14 of chapter 20 of the general laws, see p.
605. This section provides that "every officer whose fees
are prescribed in this chapter, who shall be required to
travel in order to perform any public duty, in addition to
the fees hereinbefore prescribed, shall be entitled to mile-
age, at the rate of ten cents per mile, in going to and re-
turning from the place where the service is performed."

A question is made that the sheriff is not one of the officers whose fees are prescribed in the chapter referred to. But suppose it be granted that he is such a person, did he have to travel to a place where this duty was to be performed? The duty to be performed was to convey a convict to the penitentiary. The place where the conveyance (which was the duty to be performed) commenced, was at the county jail where the convict was confined, and extended to the penitentiary. The conveyance was the transportation of the prisoner over the journey, and the responsibility and guarding of the prisoner commenced at the jail and continued along the whole journey, as much as the responsibility in the transportation of freight commenced at the place where the common carrier receives it of the consignor, and continues to the place of delivery to the consignee. The travel was included in the conveyance. If the sheriff is required to summon a juror, his duty is the service which must be performed where the juror is, and if he does not find him, the duty cannot be performed in whole or in part.

But if he is required to transport property from Salem to Portland, and he takes the property at Salem, the service begins to be performed when he takes the property, and continues until he has finished the transportation; the duty to be performed necessarily extends over a certain definite space, and travel is a part of the duty, as much as reading a summons is part of the service. If any travel could be charged in this case for going to the place of performance, it would be for going to the county jail to find the prisoner, for there is where the duty to be performed must commence. We think it was the intention of the legislature to fix in this section 5 all the compensation which a sheriff should be entitled to for this service.

The judgment of the circuit court will be affirmed.